UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KENNETH FRIEDMAN, | Case No.: 3:17-cv-00433-MMD-WGC |
| Plaintiff, | **Report & Recommendation of United States Magistrate Judge** |
| v. | Re: ECF Nos. 174, 175 |
| ROMEO ARANAS, *et al.*, | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's Motions for Temporary Restraining Order and Injunction to Restrain Harmful Transfers and Custody Placement. (ECF Nos. 174, 175.)[1] Defendants filed a response. (ECF Nos. 182, 182-1.) Plaintiff filed a reply. (ECF No. 190.)

After a thorough review, it is recommended that the motions be denied.

## **I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (*Id.*) Defendants are NDOC's Medical Director (former) Romeo Aranas; NNCC Caseworker Shelly Conlin, NNCC Staff Psychologist Bradley Kyle, NNCC Staff Psychologist, NNCC Social

---

[1] These documents are identical but docketed separately due to the different relief sought.

Worker William Pence, NNCC psyche nurse Danielle Richards, NNCC Associate Warden Lisa Walsh, (former) NNCC Psychologist Lauren Wing, and NNCC Psychologist Nathaniel Woods.[2]

The court screened Plaintiff's second amended complaint (SAC) (ECF No. 100), and allowed Plaintiff to proceed with the following claims:  (1) an Eighth Amendment deliberate indifference to serious medical needs claim against Woods, Kyle, and Aranas based on allegations that they deprived him of adequate psychotherapy, counseling and rehabilitation in contravention of prior orders and treatment received from various mental health service providers; (2) a Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-1(a) claim against Woods, Kyle, and Aranas based on allegations they would not allow him to obtain therapy unless he cut his hair and beard in violation of tenets of his Orthodox Jewish faith; (3) a retaliation claim against Richards, Woods, and Kyle based on allegations that disciplinary charges were filed against him in retribution for filing grievances and lawsuits; (4) an Eighth Amendment deliberate indifference to serious medical needs claim against Kyle, Woods, Pence and Wing based on allegations they engaged in knowing misdiagnoses so Plaintiff would not receive treatment for his post-traumatic stress disorder (PTSD); (5) Eighth Amendment and retaliation claims against Woods, Kyle, Pence and Richards based on allegations they restricted him to seeing only non-female mental health staff  because of his protected conduct which resulted in his access to mental health care being severely constrained; and (6) retaliation claims against Walsh and Conlin based on: (a) allegations they contrived a false classification score to lock Plaintiff up in administrative segregation after he refused to settle his case at mediation and threatened him with a punitive transfer to ESP, and (b) allegations that he received a retaliatory transfer to Southern Desert

---

[2] Defendant Keith Ownsby was dismissed without prejudice under Federal Rule of Civil Procedure 4(m). (ECF No. 103.)

Correctional Center (SDCC), which his classification notes precluded, on the basis of a false pretext of anonymous threatening kites against him which were not properly investigated. (*See* ECF No. 83.)

Only the retaliation claims against Walsh and Conlin are pertinent this request for injunctive relief. Plaintiff requests a temporary restraining order (TRO) and permanent injunction to restrain Defendants, their agents, successors and others acting in concert with them at NDOC from acting out further harmful transfers (retaliatory or otherwise) and custody placements, and from otherwise endangering his health, safety, medical and mental health care needs.

The court finds that Plaintiff has not demonstrated the prerequisites for obtaining injunctive relief, and his motions should be denied.

## II. LEGAL STANDARD

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Injunctions and restraining orders are governed procedurally by Federal Rule of Civil Procedure 65, but case law outlines the substantive requirements a party must satisfy to obtain an injunction or restraining order. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) ("[T]he general availability of injunctive relief [is] not altered by [Rule 65] and depend[s] on traditional principles of equity jurisdiction.").

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each

party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted). ). The Ninth Circuit has held that "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are met." *Alliance for the Wild Rockies v. Cottress*, 632 F.3d 1127, 1132 (9th Cir. 2011) (internal quotation marks omitted).

The Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)...operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

///

4

A party seeking permanent injunctive relief must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 141 (2010); *Arizona Dream Act Coalition v. Brewer*, 855 F.3d 957 (9th Cir. 2017), *cert. denied*, 138 S.Ct. 1279 (March 19, 2018) (citing *Monsanto*).

### III. DISCUSSION

Plaintiff first discusses his claim that he was subject to a retaliatory transfer to Ely State Prison (ESP) based on false classification scores, but then asserts that unknown officials refused to act out on that transfer. (ECF No. 174 at 2.) He goes on to discuss his second retaliation claim: that Defendants (Walsh and Conlin in the SAC) came up with a plan to rid themselves of Plaintiff at NNCC by claiming that an anonymous person(s) was writing threatening things about Plaintiff, and then locked him up in administrative segregation for his protection without an investigation and sent him to Southern Desert Correctional Center (SDCC). According to Plaintiff, his classification notes prohibited him being placed at SDCC due to concerns for his safety. He has since been moved to High Desert State Prison (HDSP). He is currently to remain at HDSP under order of the Eighth Judicial District Court for the duration of his habeas proceeding there. (ECF No. 182-1, p. 2, ¶ 8.)

At HDSP, he asserts that Defendants' "agents" and "coworkers" have left Plaintiff in limbo, refusing to acknowledge his enemies and danger posed to him at ESP. They have also indicated they have no intent to do anything about clearing his "separatees" at HDSP or Lovelock Correctional Center (LCC) so as to make it look like there are no other options but to send him to

5

ESP. He has sent grievances and requests asking not to be sent to ESP because he has specific enemies there, and he contends that they have refused to register or acknowledge this. In addition, he contends that ESP does not have adequate mental health care services for his needs.

Plaintiff claims that he knows Defendants, their agents, co-workers, successors, and officials at NNCC and HDSP have an active intent to immediately endanger him by transferring him to ESP.

In support of their response, Defendants submit the declaration of Jennifer Nash, Associate Warden at HDSP. She states that at this time there is no plan to transfer plaintiff to ESP; he is currently housed at HDSP due to a court order from the Eighth Judicial District Court; at this time, his (classification) points do not classify him for transfer to ESP; and, he has self-designated separatees at LCC, HDSP, NNCC, and ESP, that he asserts he has issues with or a danger to his safety.(ECF No. 182-1.)

Insofar as Plaintiff requests a TRO or preliminary injunction, he has not established he is entitled to such relief. First, other than providing a conclusion that he has a reasonable ground for success on the merits, he does not actually address the likelihood of success on the merits. Instead, Plaintiff accuses Walsh and Conlin of fabricating a classification score in an effort to get Plaintiff transferred to ESP. Ultimately, he was not transferred there, and importantly, Plaintiff provides no evidence or even any substantive factual detail to support his claim of fabrication of the classification score. Next, he accuses Walsh and Conlin of coming up with a plan to transfer him out of NNCC by conjuring up the idea that there were anonymous threats asserted against him, and then sent him to SDCC, which his classification notes prohibited. Again, Plaintiff provides no further factual detail or evidence in support of this claim. He has provided no evidence to support his claim that there were no threats made against him.

6

Second, Plaintiff has not demonstrated he will suffer irreparable injury in the absence of injunctive relief. He appears to contend it is inevitable that he will be transferred to ESP, but this is not supported by the record. Plaintiff is on a court hold to remain at HDSP through the pendency of his state habeas proceeding. Plaintiff mentions that he has received direct notices from classification staff at HDSP of their intent to transfer him to ESP, but does not provide these notices, indicate who these staff members are, or provide any other relevant details. Moreover, according to Defendants, there are no current plans to transfer Plaintiff to ESP and his current classification score is too low for him to be housed at ESP.

Given that Plaintiff has not established a likelihood of a transfer to ESP, it cannot be said that injunctive relief would be in the public interest. Nor does the balance of equities weigh in his favor, particularly where the Supreme Court has recognized that "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976).

Plaintiff is housed at HDSP under court order. The Defendants to this action are employed at NNCC, and would seemingly not have involvement over whether Plaintiff is transferred to ESP and there is no evidence these unidentified individuals are the agents of the Defendants. Therefore, even if Plaintiff did satisfy the elements for injunctive relief, the court could not award such relief. Fed. R. Civ. P. 65(d)(2).

Plaintiff has likewise failed to demonstrate the prerequisites to permanent injunctive relief as he has not shown he has suffered irreparable injury, that an equitable remedy is warranted, that a permanent injunction would be in the public interest, or that monetary damages are inadequate.

For these reasons, Plaintiffs motions for injunctive relief should be denied.

Finally, the court notes that if Plaintiff has issues with those persons listed as separatees at other NDOC facilities, perhaps he should request a hearing with the appropriate committee to address his concerns.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **DENYING** Plaintiff's Motions for Temporary Restraining Order and Injunction to Restrain Harmful Transfers and Custody Placement (ECF Nos. 174, 175).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: November 6, 2019.

_____
William G. Cobb
United States Magistrate Judge