# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

KENNETH FRIEDMAN,

    Plaintiff

v.

ROMEO ARANAS, et. al.,

    Defendants

Case No.: 3:17-cv-00433-MMD-WGC

**Report & Recommendation of United States Magistrate Judge**

Re: ECF No. 155/155-1

    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

    Before the court is Plaintiff's Motion for Partial Summary Judgment on RLUIPA Claims against defendants Kyle, Woods, Aranas. (ECF No. 155, 155-1.)[1] Defendants filed a response. (ECF Nos. 203, 203-1 to 203-8, 205.) Plaintiff filed a reply. (ECF No. 211.)

    After a thorough review, it is recommended that Plaintiff's motion be denied as there are genuine issues of material fact regarding whether Plaintiff's religious exercise was substantially burdened.

---

[1] Plaintiff filed a motion seeking leave to file the partial motion for summary judgment under seal because it references and contains exhibits related to his sensitive mental health condition. (ECF No. 154.) On November 7, 2019, the court issued an order granting the motion in part and denying it in part. Specifically, the court ordered that ECF No. 155 at 1-15, 37-41, 43-48, would not be sealed, but ECF No. 155 at 17-36, 50-75, would be sealed. (ECF No. 201.) ECF No. 155 contains the redacted version of the motion, and ECF No. 155-1 is the unredacted/sealed version of the motion.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc-1(a) (RLUIPA). The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (*Id.*) Defendants are NDOC's former Medical Director Romeo Aranas, NNCC Caseworker Shelly Conlin, NNCC Staff Psychologist Bradley Kyle, NNCC Social Worker William Pence, NNCC psychiatric nurse Danielle Richards, NNCC Associate Warden Lisa Walsh, former NNCC Psychologist Lauren Wing, and NNCC Psychologist Nathaniel Woods. Defendant Keith Ownsby was dismissed without prejudice under Federal Rule of Civil Procedure 4(m). (ECF No. 103.)

The court screened Plaintiff's second amended complaint (SAC) (ECF No. 100), and allowed Plaintiff to proceed with the following claims: (1) an Eighth Amendment deliberate indifference to serious medical needs claim against Woods, Kyle, and Aranas based on allegations that they deprived him of adequate psychotherapy, counseling and rehabilitation in contravention of prior orders and treatment received from various mental health service providers; (2) a RLUIPA claim against Woods, Kyle and Aranas based on allegations they would not allow him to obtain therapy unless he cut his hair and beard in violation of tenets of his Orthodox Jewish faith; (3) a retaliation claim against Richards, Woods, and Kyle based on allegations that disciplinary charges were filed against him in retribution for filing grievances and lawsuits; (4) an Eighth Amendment deliberate indifference to serious medical needs claim against Kyle, Woods, Pence and Wing based on allegations they engaged in knowing

misdiagnoses so Plaintiff would not receive treatment for his post-traumatic stress disorder (PTSD); (5) Eighth Amendment and retaliation claims against Woods, Kyle, Pence, and Richards based on allegations they restricted him to seeing only non-female mental health staff because of his protected conduct which resulted in his access to mental health care being severely constrained; and (6) retaliation claims against Walsh and Conlin based on: (a) allegations they contrived a false classification score to lock Plaintiff up in segregation after he refused to settle his case at mediation and threatened him with a punitive transfer to ESP, and (b) allegations that he received a retaliatory transfer to Southern Desert Correctional Center (SDCC), which his classification notices precluded, on the basis of a false pretext of anonymous threatening kites against him which were not properly investigated. (*See* ECF No. 83.)

Only the RLUIPA claim in Count II against Woods, Kyle and Aranas is at issue here. Plaintiff argues that he is entitled to summary judgment on this claim because Woods, Kyle and Aranas were responsible for denying him participation in NNCC's psychotherapy programs for sex offenders because those programs required that he shave his beard and keep his hair cut short, which he claims would have violated his Orthodox Jewish faith tenets. Defendants argue there are material factual issues that preclude summary judgment in Plaintiff's favor.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome

of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. RLUIPA Standard**

Section 3 of RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person --(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. §2000cc-1(a).

5

"Under RLUIPA, the challenging party bears the initial burden of proving that his religious exercise is grounded in a sincerely held religious belief …, and that the government's action substantially burdens his religious exercise." *Holt v. Hobbs*, 135 S.Ct. 853, 857 (2015) (citations omitted).

"Religious exercise" is "any exercise of religion, whether or not compelled by, or central to, a system or religious belief." 42 U.S.C. § 2000cc-5(7)(A).

RLUIPA does not contain a definition for "substantial burden," but the Ninth Circuit has held that "'a substantial burden on religious exercise must impose a significantly great restriction or onus upon such exercise.'" *Hartmann v. Cal. Dep't of Corr. and Rehab.*, 707 F.3d 1114, 1124-25 (9th Cir. 2013) (quoting *San Jose Christian Coll. V. City of Morgan Hill,* 360 F.3d 1024, 1034 (9th Cir. 2004)). "In the context of a prisoner's constitutional challenge to institutional policies, [the Ninth Circuit] has held that a substantial burden occurs 'where the state … denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id*. at 1125 (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005)).

If the plaintiff makes a showing of a substantial burden on the exercise of his religion, the court's analysis then turns to whether the defendant has established that the burden furthers "a compelling governmental interest," and does so "by the least restrictive means." *Holt,* 135 S.Ct. at 857 (citation omitted). This is an "exceptionally demanding" standard, which requires the government to "sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y]." *Holt*, 135 S.Ct. at 858 (internal citation and quotation marks omitted).

## B. Substantial Burden

In his motion, Plaintiff asserts that he was denied participation in his housing facility's psychotherapy programs for the Senior Structured Living Program (SSLP) and Sex Offender Treatment Programming (what Defendants refer to as Sexual Treatment of Offenders in Prison or STOP[2]) because he refused to cut his hair short and be clean shaven due to his Orthodox Jewish beliefs. He claims he was never given a compelling reason for this restriction. Nor was he presented with any alternative means of participating in the programs. In support of his position, Plaintiff submits a kite that Plaintiff sent on August 23, 2017, stating that he could not go by the rules that compelled him to shave and cut his hair due to his religious beliefs. Dr. Kyle responded that Plaintiff was not compelled to shave or cut his hair, but instead would forfeit any consideration for inclusion into SSLP when he elected not to follow their procedures and rules. (ECF No. 155-1 at 44.)

Defendants do not challenge that Plaintiff has a sincerely held religious belief that as an Orthodox Jewish man he must keep his hair and beard long in accordance with his religious tenets. It is also undisputed that Plaintiff was required to keep his hair cut short and be clean shaven if he wanted to participate in SSLP.

Defendants submit evidence that the SSLP is an optional, voluntary program, and is not a core mental health therapy group, but instead is more of a "life skills" program. (Kyle Decl., ECF No. 203-5 ¶¶ 7-11.) It is undisputed that there is no exception (religious or otherwise) to the

---

[2] The court will refer to the latter program as STOP. The parties do not clearly describe the interplay between the SSLP and STOP programs, if any. The court notes that NDOC's website describes the STOP program as a "core" correctional mental health program, while the SSLP program is described as "optional" mental health program. *See* doc.nv.gov/Programs/Correctional_Programs/Correctional_Programs/, last visited December 20, 2019.

hair/shaving requirements. The requirements apply to everyone who chooses to participate. Defendants present evidence that the purpose of the hair/shaving requirements is to test the applicant's commitment to the program, and to encourage the applicant to follow the rules. (*Id.* ¶ 12.) According to Dr. Kyle, Plaintiff continued to receive treatment and mental health therapy during this time frame, and suffered no discipline or loss of privileges for keeping his facial hair. (*Id.* ¶¶ 13-14.)

According to NNCC Caseworker Ron Hannah, he interviewed Plaintiff for SSLP program acceptance. (ECF No. 203-6 ¶ 6-8.) No decision was made on Plaintiff's acceptance into SSLP at that time because Plaintiff indicated he wanted to take a different program: STOP. (*Id.* ¶ 9.) At that time, the STOP program was already in progress, and Plaintiff would have had to wait six months for another STOP group to begin. (*Id.* ¶ 11.) Plaintiff chose to interview at a later date closer to the beginning of another STOP group. (*Id.* ¶ 12.)

Thus, Defendants argue that his religious exercise was not substantially burdened because: (1) he was still receiving mental health care; (2) he was merely precluded from participating in an optional, voluntary life skills program if he declined to be clean shaven; (3) he declined to continue his application for the SSLP program because he wanted to join the STOP program, which he could not do then because it was already in session so he would have to wait six months for the next group to begin.

In his reply brief, Plaintiff contends that these hair/shaving requirements also applied to participation in the STOP program, and he claims that in order to participate in the STOP program, an inmate must first be part of the SSLP program. (ECF No. 211 at 3.)

The fact that the SSLP program was voluntary does not mean that the program requirements for hair/shaving did not substantially burden Plaintiff's religious exercise. Nor does

the fact that Plaintiff was not punished for failing to comply necessarily mean that his religious exercise was not substantially burdened. In *Warsoldier* and *Hartmann* the Ninth Circuit indicated that conditioning *receipt of a benefit* on conduct that violates religious beliefs can substantially burden religious exercise. *Warsoldier*, 418 F.3d at 996 (relying on *May v. Baldwin*, 109 F.3d 557, 563 (9th Cir. 1997) (substantial burden on religious exercise where prison conditioned receipt of benefits on inmate undoing dreadlocks in violation of Rastafarian beliefs); *Thomas v. Review Bd. of Indiana Employment Sec. Division*, 450 U.S. 707, 717-18 (1981); *Sherbert v. Verner*, 374 U.S. 398, 404, n.5 (1963) ("Under some circumstances, indirect discouragements' undoubtedly have the same coercive effect upon the exercise of First Amendment rights as imprisonment, fines, injunctions or taxes."); *Planned Parenthood v. Arizona*, 718 F.2d 938, 942 (9th Cir. 1983) ("The Supreme Court has clearly articulated that government may not restrict exercise of constitutionally protected rights, even when that restriction takes the form of withholding a benefit, rather than applying a penalty, for that exercise.")); *Hartmann*, 707 F.3d at 1125 (quoting *Warsoldier*, 418 F.3d at 995).

The court nevertheless finds that Defendants have raised a genuine dispute of material fact as to whether Plaintiff's religious exercise was substantially burdened.

It is undisputed that in order to participate in the SSLP it is required that the inmate be clean shaven. It is unclear whether that was also a requirement for STOP. Plaintiff argues it was in his reply, but provides no evidence to support this assertion. He points to Defendants' Exhibits 5 and 7, and his own motion at pages 43-48 to support his assertions. Exhibit 5 is Dr. Kyle's declaration, which says nothing about the STOP program or its requirements, but only briefly discusses the SSLP program. (ECF No. 203-5.) Exhibit 7 is Ron Hannah's declaration. It also discusses the SSLP program, and only states that Plaintiff did not proceed with the interview

process because he wanted to take the STOP program, but does not discuss STOP's requirements. (ECF No. 203-6.) Pages 43-48 of his motion are his kites. There is an August 23, 2017 kite where Plaintiff stated he could not go by the rules of Unit 1 regarding shaving and cutting his hair for religious reasons. Dr. Kyle responded that Plaintiff was not compelled to shave and cut his hair, but that he forfeits any consideration for inclusion into the *SSLP* program if he elected not to follow those rules. (ECF No. 155 at 44.) It made no mention of STOP. The other two kites had to do with his claim that he was restricted to only seeing male mental health staff members. (ECF No. 155 at 46, 48.)

In addition, it is not clear from the record what benefit these two programs would have provided to Plaintiff. It is Plaintiff's burden to show that his religious exercise was substantially burdened. This can be done by demonstrating that he was denied an important benefit because of conduct mandated by his religious beliefs so as to put substantial pressure on him to modify his behavior and violate those beliefs. Plaintiff asserts very generally that he was denied psychotherapy but provides no factual detail or evidence for the court to conclude what SSLP or STOP entail so as to make a determination as to whether he was denied an important benefit. On the other hand, Defendants have produced evidence that SSLP was a life skills program and was not core mental health therapy. According to Dr. Kyle, Plaintiff was still receiving mental health treatment during this time period. They have also produced evidence that he elected to apply for the STOP program, but had to wait until the next session began.

Defendants have raised a genuine dispute of material fact as to whether Plaintiff's religious exercise was substantially burdened because: (1) it is unclear whether he was denied a significant benefit in being forced to join the SSLP program when there is evidence that it was not core mental health therapy and that he continued to receive treatment during this time;

(2) there is evidence that he elected not to continue with the interview process for the SSLP program and instead wait for a STOP program to begin; and (3) there is insufficient evidence for the court to determine whether he would have been required to shave/cut his hair to participate in STOP.

Since there is a genuine dispute of material fact as to whether Plaintiff's religious exercise was substantially burdened, the court need not reach the issue of whether Defendants have shown that the burden was supported by a compelling government interest and was the least restrictive means of meeting that burden.

**C. Damages**

Plaintiff does raise the argument in his motion that should he prevail on his RLUIPA claim, he is entitled to damages, including punitive damages, for the alleged violation of RLUIPA. Defendants argue in response that Plaintiff cannot recover damages under RLUIPA. Defendants are correct.

A prisoner may not state a claim under RLUIPA for damages against prison officials in their individual capacities because "RLUIPA was enacted pursuant to Congress's constitutional powers under the Spending Clause, and the individual defendants are not recipients of any federal funds." *Wood v. Yordy*, 753 F.3d 899, 901 (9th Cir. 2014) (citation omitted). Nor are damages recoverable against defendants sued in their official capacities. *Sossamon v. Texas*, 131 S.Ct. 1651, 1658, 59 (2011); *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015).

Plaintiff argues in his reply brief that he can recover damages because he incorporated the First Amendment Free Exercise Clause into his RLUIPA claims. Plaintiff is incorrect.

The first amended complaint (FAC) alleged there were program restrictions at NNCC that would not allow Plaintiff to participate in psychotherapy because it required him to

11

shave/cut his hair in violation of his Orthodox Jewish religious tenets, and that Defendants excluded him from obtaining STOP or paraphilia therapy unless he agreed to desecrate his hair and beard length in violation of his religious rights. (ECF No. 16 at 4, 5, 6.) On March 27, 2018, the court issued an order screening the FAC and found Plaintiff stated a colorable RLUIPA claim based on the allegations that Woods, Kyle and Aranas would not allow him to obtain therapy unless he cut his hair and beard, in violation of his religious tenets. (ECF No. 15 at 6.) Plaintiff did not object to the screening order, or otherwise argue that he was trying to assert a First Amendment Free Exercise Clause claim in addition to the RLUIPA claim. Instead, following an unsuccessful attempt to mediate the case, on August 1, 2018, Plaintiff filed a motion to submit a supplemental complaint, asserting claims based on facts that had arisen since the filing of the FAC. (ECF No. 26.) If Plaintiff thought the court had erroneously construed the FAC as not asserting a Free Exercise claim, he could have said so at that point, but did not. The proposed supplemental complaint asserted additional claims unrelated to the alleged infringement of his religious rights.

Then, some six months later, on February 22, 2019, Plaintiff filed a motion to amend his complaint again. (ECF Nos. 66, 66-1.) The proposed amendments did not relate to Plaintiff's religious rights. Nor did the motion to amend argue that Plaintiff also wished to assert a First Amendment Free Exercise claim in addition to the RLUIPA claim.

The court granted the motion for leave to amend, but required Plaintiff to file a SAC that was complete in and of itself. (ECF No. 83.) The order reiterated that Plaintiff could proceed with the claims previously allowed to go forward in the amended and supplemental complaint as well as the newly asserted claims, including the RLUIPA claim from the amended complaint against Woods, Kyle and Aranas, based on the allegations they would not allow him to obtain

therapy unless he cut his hair and beard in violation of the tenets of his Orthodox Jewish faith. (ECF No. 83 at 12.) Plaintiff did not object or otherwise argue that his pleadings should have been construed as asserting a First Amendment Free Exercise claim. Instead, when Plaintiff filed the SAC, Plaintiff clearly referenced only RLUIPA. He included allegations that the Defendants did not allow him to participate in therapy in a group setting unless he would keep his beard and hair shaven or cut short which would violate his Orthodox Jewish tenets, and that they excluding him from obtaining STOP or paraphilia therapies unless he desecrated his beard and hair length in violation of his religious rights. (ECF No. 100 at 5-7.) Therefore, Plaintiff is not proceeding with a First Amendment Free Exercise Claim, and the RLUIPA claim cannot be construed as encompassing a First Amendment Free Exercise Claim.

Therefore, if Plaintiff ultimately prevails on his RLUIPA claim, he is not entitled to recover damages.

**D. Injunctive Relief**

Plaintiff also argues in his motion that should he succeed on his RLUIPA claim, he is entitled to injunctive relief. Defendants argue that Plaintiff has been transferred from NNCC, so any request for injunctive relief is moot. *Jones v. Williams*, 791 F.3d 1023 (9th Cir. 2015).

*Jones* held that the inmate's claims for injunctive relief were moot because the inmate had been released from custody. *Id*. at 1031. The court said this was because of his release from custody and the record did not contain evidence of "continuing effects of the alleged violations" and there was "no reasonable expectation that [the defendants] could violate [the inmate's] rights in the future." *Id*. (citations omitted).

Here, Plaintiff points out that he has not been released, and while he was transferred from NNCC on November 14, 2017, it was only a temporary court appearance transfer hold at HDSP, and he was moved back to NNCC on December 14, 2017.

In light of the fact that Plaintiff has not been released from custody, and he may be transferred to NNCC in the future, his claims for injunctive relief are not moot.

In sum, Plaintiff's motion for partial summary judgment as to the RLUIPA claim should be denied.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Plaintiff's motion for partial summary judgment (ECF Nos. 155/155-1).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: December 27, 2019

*William G. Cobb*
William G. Cobb
United States Magistrate Judge